UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FEDELICIA F. PENA,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**CAROLYN W. COLVIN**<br>**ACTING COMMISSIONER OF**<br>**SOCIAL SECURITY,**<br><br>    **Defendant.** | Civ. No. 2:14-cv-07813 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Fedelicia F. Pena brings this action pursuant to 42 U.S.C. §§ 405(g) seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her Title II application for a period of disability and disability insurance benefits, and Title XVI application for supplemental security income. For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

**I.    LEGAL STANDARDS**

   **A. The Five-Step Sequential Analysis**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four.

*Id.* §§ 404.1520(d), 416.920(d).  In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work.  *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f).  The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC.  20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### B. Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues.  *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings."  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations.  *See id.* (citing 42 U.S.C. § 405(g)).

## II. BACKGROUND

Plaintiff – a thirty-nine-year-old resident of Perth Amboy, New Jersey – seeks a finding of disability on the basis of the following impairments: (1) Arnold Chiari malformation; (2) cervical cord syrinx; (3) status-post cervical laminectomy; (4) left upper extremity weakness; (5) lumbar spine stenosis; (6) depression; (7) obesity; and (8) a heel spur. Administrative Transcript ("Tr.") 20.  Plaintiff has an eighth grade education and has held various jobs, including a factory worker, housekeeper, and homemaker aid.  Tr. 38-39, 203.  She alleges disability as of March 22, 2011.  Tr. 49.

In August 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB"), and a Title XVI application for supplemental security income.  Tr. 17.  Plaintiff's applications alleged that she could not work because she suffered from a variety of impairments, including various back disorders, depression, and obesity.  Tr. 174.  Plaintiff's applications were denied initially and on reconsideration.  Tr. 48-63.  After holding a hearing on March 7, 2013, the Administrative Law Judge ("ALJ") similarly denied the applications.  Tr. 11-32.  The Appeals Council then denied her request for review, Tr. 1-8, and this appeal followed.

### A. Summary of the Record

The record includes medical records from physician Dr. Rajnik Raab, M.D., notes from Donald Frank, M.D., treatment records from the Jewish Renaissance Medical Center, and other emergency room records. The record also includes interrogatory responses from vocational expert ("VE") Patricia Sasona, as well as Plaintiff's own testimony.

Dr. Raab of North Jersey Spine Group evaluated Plaintiff on several occasions. In November 2010, Dr. Raab noted that Plaintiff underwent surgery for a Chiari malformation on December 10, 2008. Tr. 261. He further explained that despite occasionally suffering from headaches and gait difficulty, Plaintiff had progressed well since her surgery. Specifically, Plaintiff's extrocular movements and motor strength were intact. *Id.* Dr. Raab's 2010 notes show a marked improvement in Plaintiff's condition since Dr. Raab last saw her in 2009. Tr. 263. Even in 2009, however, Dr. Raab noted that there was no tenderness or palpation in the surgical area. *Id.*

Dr. Frank also evaluated Plaintiff following her surgery. In November 2011, Dr. Frank noted that Plaintiff complained of pain, but also determined that her motor and reflex examinations were completely normal. Dr. Frank further concluded that there were no abnormalities in the cervical spine. Tr. 287. Moreover, diagnostic imaging evaluations sent to Dr. Frank also show no evidence of significant disc protrusion, no significant crowding at the foramen magnum, no showing of a herniated nucleus polposus, and nothing indicating a compression fracture or spondylolisthesis. Tr. 288. And while those evaluations showed no significant cervical spine instability, they did show a mild bulging annulus and a narrowing of a nerve root canal. Tr. 289-90.

Records from the Jewish Renaissance Medical Center in Perth Amboy, NJ also provide insight to Plaintiff's medical condition. They note, for example, that Plaintiff complained of back pain; however, they also conclude that there were no abnormalities in Plaintiff's lumbar spine. Tr. 310-15. Notes from the Jewish Renaissance Medical Center indicate that Plaintiff was mostly "doing well" and did not suffer from any neurological problems. Tr. 330-31. Other notes leading up to January 2013 show similarly normal results. Tr. 331-40, 355-57. Moreover, while the records indicate that Plaintiff had left heel pain, the pain did not cause her to lose balance or become numb. Tr. 348.

Plaintiff also filled out a function report in which she stated that she was capable of eating, reading, and "do[ing] things around the house." Tr. 208. Plaintiff reported difficulty sleeping, but also explained that she was able to prepare food and shop in stores. Tr. 211. Additionally, Plaintiff reported the ability to visit family and talk on the phone. Tr. 212. Plaintiff also testified at the hearing, and represented that she suffers from frequent headaches, back pain, and blurred vision. Specifically, Plaintiff testified that she suffered from headaches nearly every day. Tr. 40-41. Plaintiff also reported difficulty sleeping due to pain. Tr. 44.

Finally, VE Patricia Sasona responded to interrogatories regarding Plaintiff's ability to work. Ms. Sasona concluded that someone of Plaintiff's age, education, RFC, and experience level would be capable of performing the jobs of a table worker and a final assembler. Tr. 27.

### B. The ALJ's Decision

At step one, the ALJ found that Plaintiff did not engage in substantial activity during the relevant time period. Tr. 19. At step two, the ALJ concluded that Plaintiff had the following severe impairments: (1) Arnold Chiari malformation; (2) cervical cord syrinx with neck pain; (3) left upper extremity weakness; (4) lumbar spine stenosis; (5) depression; (6) obesity; and (7) a heel spur. Tr. 20. At step three, the ALJ concluded that Plaintiff's impairments did not meet nor were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. Tr. 20. In doing so, the ALJ found that Plaintiff's spinal impairments failed to demonstrate the existence of herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture. The ALJ further found that Plaintiff's heel spur did not meet the relevant listing requirements of Section 1.02, and that Plaintiff's other physical impairments did not meet the listed impairments even after considering her obesity. *Id.* With respect to Plaintiff's depression, the ALJ determined that Plaintiff suffered only mild restriction in activities of daily living and social functioning. Therefore, the ALJ explained, Plaintiff did not meet the listing requirement of 12.04. Tr. 21.

At step four, the ALJ found that Plaintiff has the RFC to perform sedentary work as defined under the Regulations, *i.e.*, she is able to lift or carry 10 pounds, perform unlimited pushing and pulling within that weight restriction, stand/walk for two hours in an eight hour workday, and sit for six hours a day so long as she is provided adequate breaks. Tr. 22. However, the ALJ found that Plaintiff's RFC was limited in that she can bend only occasionally, never crawl, and never climb scaffolds. Tr. 22. The ALJ further explained that Plaintiff would be limited to work that involves simple instructions and a steady routine. *See id.*

In finding that Plaintiff was capable of sedentary work, the ALJ took into account wide variety of sources. Notably, the ALJ relied on medical records showing that Plaintiff had progressed well since her 2008 surgery. Tr. 23. The records specifically show that Plaintiff had completely healed from her surgery and that she enjoyed an excellent range of motion and a normal gait. Moreover, the ALJ emphasized that an "x-ray of the cervical spine…revealed an excellent decompression [and] no abnormalities." Tr. 23. Additionally, and despite Plaintiff's subjective complaints of back pain, records from the Jewish Renaissance Medical Center showed a "normal range of motion in all joints with no neurological, sensory or strength deficits. *Id.* While the ALJ noted Plaintiff's other testimony regarding her impairments, he found that the "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in the decision." Tr. 24. The ALJ based that determination on the

fact that Dr. Raab's notes revealed good progression following Plaintiff's surgery. Similarly, the ALJ noted that Plaintiff reported being able to walk 30 minutes a day for six days a week in April 2012, and that her heel spur received only conservative treatment. Tr. 24-25.

The ALJ further concluded that Plaintiff's testimony was inconsistent with MRI records and other forms of objective medical evidence. The ALJ's decision also pointed to a function report filled out by Plaintiff, which indicated that Plaintiff could drive a car, perform chores, shop in a store, and attend church. Tr. 25.

At step five the ALJ concluded that Plaintiff was unable to perform any past relevant work. However, after reviewing interrogatory responses from Ms. Sasona, the ALJ found that there exist a number of jobs in the economy that Plaintiff is capable performing, including the job of table worker and final assembler. Consequently, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 27.

### III. DISCUSSION

Plaintiff challenges the ALJ's determination that she was not disabled under the Social Security Act. Specifically, Plaintiff argues that the ALJ erred at step 3 by failing to adequately consider Plaintiff's back impairments, obesity, and depression issues. Plaintiff further argues that the ALJ failed at step four by failing to account for Plaintiff's spinal problems or her subjective complaints of pain. Finally, Plaintiff argues that the determination at step five is flawed because the hypothetical posed to the VE did not include Plaintiff's finger restrictions. The Court will address these arguments in turn.

#### A. Step Three

Plaintiff first argues that the ALJ failed to adequately consider Plaintiff's back problems at step three. Plaintiff notes that the medical evidence reveals "spinal cord damage" and that she underwent significant procedures aimed at relieving her spinal ailments. Therefore, Plaintiff argues, her spinal ailments meet Listing 1.04. The Court rejects Plaintiff's position. In order to meet Listing 1.04(A), Plaintiff's back impairment must involve nerve root compression characterized by certain specific factors, including neuro-anatomic distribution of pain.[1] Here, not only does Plaintiff fail to show evidence of nerve root compression, one of her physicians expressly ruled out nerve root compression after examining Plaintiff's spine. *See, e.g.*, Tr. 261. Similarly, Plaintiff has failed to meet any of the other subparts of Listing 1.04 because she has failed, among other things, to demonstrate confirmed spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(B)-(C).

---

[1] The other factors include, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and in some cases, positive straight-leg raising test. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

5

Plaintiff also contends that the step three analysis is flawed because the ALJ failed to adequately assess her depression. Affective disorders will meet Listing 12.04 where they involve medically documented persistence of certain syndromes resulting in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A)-(B). Here, the ALJ's step three analysis emphasized that Plaintiff's own function report reflected minimal restrictions in daily living, social functioning, and the ability to concentrate. Tr. 21,25. The ALJ noted that Plaintiff could shop, read, prepare light meals, drive a car, and visit with family. *Id*. The ALJ's determination that Plaintiff did not meet the "paragraph C" criteria is also supported by substantial evidence. Specifically, there is nothing in the record indicating that Plaintiff has a "[m]edically documented history of chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medical or psychosocial support…." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C).

The ALJ also adequately considered Plaintiff's obesity when rendering his determination at step three. Under SSR 02-1p an ALJ must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process." Moreover, the ALJ is to consider "the combined effects of obesity with other impairments." SSR 02-1p, 2000 WL 628049, at *1, *5 ("We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing"). *See also Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504 (3d Cir. 2009) ("[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and every subsequent step.") Here, the ALJ's decision complied with the Social Security Rulings and Third Circuit precedent. In addition to discussing Plaintiff's obesity throughout the decision, the ALJ specifically noted that he evaluated Plaintiff's obesity "in the context of the overall record evidence in making this decision." Tr. 20. Moreover, Plaintiff does not point to anything in the record concerning her obesity that undermines the ALJ's step three determination. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

After carefully considering the record, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the listed impairments. For the reasons stated above, the Court concludes that the ALJ's determination is supported by substantial evidence.

### B. Step Four

Plaintiff also contends that the ALJ's RFC finding is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ nonsensically concluded that Plaintiff was capable of sedentary work even though her lumbar stenosis prevents her from

being seated for extended periods of time. Plaintiff similarly faults the ALJ for not addressing other severe impairments, including left upper extremity weakness. However, the mere "diagnosis of an impairment, by itself, does not establish entitlement to benefits under the Act…." *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004). As discussed previously, the record shows that Plaintiff "progressed well since her surgery" and enjoyed an "excellent" range of motion in her spine. Tr. 261, 287. Reports from the Jewish Renaissance Medical Center showed that her lumbar spine did not suffer from any significant abnormalities. Tr. 300-01. Moreover, Plaintiff reported that she took walks almost every day of the week. Tr. 370. In a similar vein, Plaintiff's function report demonstrated that Plaintiff was capable of a variety of activities, including going to church, preparing meals, and driving. Tr. 195, 197-98, 200, 224.

Moreover, the ALJ's step four determination is supported by substantial evidence even after one considers Plaintiff's subjective complaints of pain. While "[t]estimony of subjective pain and inability to perform even light work is entitled to great weight," *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979), an ALJ may reject such testimony where he "consider[s] the subjective pain and specif[ies] his reasons for rejecting [the testimony] and support[s] his conclusion with medical evidence on the record." *Matullo v. Bowen*, 926 F.2d 240, 254 (3d Cir. 1990). Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 24. As already explained, the ALJ thoroughly analyzed the record and pointed to specific objective medical evidence that contradicted Plaintiff's subjective testimony. Consequently, the ALJ's step four determination is supported by substantial evidence.

### C. Step Five

The Court also finds that the ALJ's determination at step five is supported by substantial evidence. Plaintiff criticizes the ALJ for failing to describe "manipulative restrictions"[2] when posing his hypothetical to the VE. Noting that she suffered from upper extremity weakness, Plaintiff contends that she was not capable of reaching, gripping, grasping, fingering, and feeling. It is true that "the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations." *See Rurtherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Here, however, the evidence belies Plaintiff's assertions regarding manipulative restrictions. The record is rife with evidence showing that Plaintiff retained the types of motor strength, muscle strength, and range of motion that are uncharacteristic of manipulative restrictions. *See, e.g.,* Tr. 261, 314-15, 357. Moreover, the ALJ's decision pointed to evidence indicating that Plaintiff did not suffer from any

---

[2] Plaintiff appears to also argue that the ALJ failed to adequately account for manipulative restrictions at step four. However, the Court finds that the ALJ did adequately account for those issues throughout the entirety of his analysis.

motor or reflex deficits.  Tr. 24.  Accordingly, the Court finds that the ALJ's determination at step five is supported by substantial evidence.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.  An appropriate order follows.

           /s/ William J. Martini
    **WILLIAM J. MARTINI, U.S.D.J.**

**Date:  January 28, 2016**